**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GREGORY PAUL SHERMAN,

       Plaintiff,

v.                                                                                                  No. CV 16-310 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Gregory Paul Sherman's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 17), filed November 23, 2016; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 19), filed January 20, 2017; and Plaintiff's *Reply in Support of Motion to Reverse and Remand for a Rehearing with Supportive Memorandum* (the "Reply"), (Doc. 22), filed February 9, 2017.

Mr. Sherman applied for disability insurance benefits on March 9, 2012, (Administrative Record "AR" 194-95), and for supplemental security income on March 26, 2012. (AR 196-202). Both applications were denied initially on November 28, 2012, (AR 68-90), and upon reconsideration on March 29, 2013. (AR 94-121). Mr. Sherman requested a hearing before an Administrative Law Judge ("ALJ"), (AR 136), which was held on August 26, 2014, before ALJ Ann Farris. (AR 32). Mr. Sherman, his father, and Nicole B. King, an impartial vocational expert ("VE"), testified at the hearing. (AR 32-33).

On October 22, 2014, ALJ Farris issued her written decision finding Mr. Sherman not disabled from his amended alleged onset date, November 21, 2010, through the date of her decision. (AR 13-26). Mr. Sherman then filed a request for review by the Appeals Council, which was denied on February 16, 2016, making ALJ Farris' decision Defendant's final decision for purposes of this appeal. (AR 1).

Mr. Sherman now argues the ALJ committed reversible legal error by incorrectly evaluating medical opinions in the record. The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to properly follow the correct legal standards, the Court finds Mr. Sherman's Motion should be **GRANTED**.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d

1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2015), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

For purposes of disability insurance benefits and supplemental security income, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

Mr. Sherman filed for disability insurance benefits and supplemental security income claiming bipolar disorder affected his ability to work. (AR 68). At step one, the ALJ found Mr. Sherman had not engaged in substantial gainful activity since his amended alleged disability onset date. (AR 18). At step two, the ALJ determined Mr. Sherman has two severe impairments: bipolar disorder and Asperger's syndrome. (AR

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

18). At step three, the ALJ concluded Mr. Sherman's impairments did not, singly or in combination, meet or medically equal a Listing impairment. (AR 19).

Proceeding to step four, the ALJ determined Mr. Sherman has the RFC to perform work at all exertional levels, but that Mr. Sherman has the non-exertional limitations of being able to perform "simple and some detailed, but not complex tasks, with no public contact and no more than occasional, superficial interaction with coworkers." (AR 20). Although the ALJ found that Mr. Sherman's impairments could be expected to cause his symptoms, she found Mr. Sherman's statements were not entirely credible regarding the intensity, persistence, and limiting effects of his symptoms. (AR 21). In sum, the ALJ concluded Mr. Sherman's treatment records indicated only mild symptoms and normal cognitive functioning. (AR 21-22).

Turning to medical opinion evidence, the ALJ first considered the opinions of Mr. Sherman's treating psychiatrist, Kevin Rexroad, M.D. (AR 21). Dr. Rexroad treated Mr. Sherman for nearly two years and twice assessed Mr. Sherman as having several moderate or marked non-exertional limitations. (AR 468-69; 477-78; 489-98). The ALJ recognized Dr. Rexroad was a treating source but found Dr. Rexroad's assessments "not compatible with his treatment records, with each other, or with the medical evidence of record as a whole." (AR 23). In the ALJ's opinion, Dr. Rexroad's notes "routinely document good overall mental functioning" and contain only a "few abnormal findings." (AR 23). Further, the ALJ found "there is no support for Dr. Rexroad's findings of marked restriction in activities of daily living, social functioning, or concentration, persistence or pace." (AR 23). The ALJ did not elaborate how Dr. Rexroad's

5

assessments were inconsistent with each other. Ultimately, the ALJ gave Dr. Rexroad's opinions "limited weight." (AR 23).

As far as other opinion evidence, the ALJ assigned the opinion of William Chambreau, LMSW, "some weight." (AR 23). Mr. Chambreau opined that Mr. Sherman has various moderate to marked restrictions, which the ALJ found were "not entirely consistent with the medical evidence of record." (AR 23). Further, the ALJ gave consultative examiner Paula Hughson, M.D., limited weight. (AR 23). Dr. Hughson examined Mr. Sherman and determined he would not be capable of supporting himself due to his impairments. (AR 431). The ALJ disregarded Dr. Hughson's opinion because her conclusion "seem[ed] disproportionate to her findings." (AR 22-23). On the other hand, the ALJ gave state agency psychological consultants' opinions "significant weight because they are largely consistent with the medical evidence of record as a whole." (AR 23). The state agency consultants found mostly moderate impairments. (AR 86-88).

Finally, the ALJ found Mr. Sherman's statements were "not fully credible." (AR 24). Although the ALJ believed Mr. Sherman experiences limitations, the ALJ did not believe Mr. Sherman suffered limiting effects to the extent Mr. Sherman alleged, given inconsistent statements he made, that his symptoms responded well to medication, and that he worked or looked for work during the period he claims disability. (AR 24).

At step five, the ALJ found Mr. Sherman incapable of performing his past relevant work. (AR 24). However, based on VE testimony, the ALJ determined Mr. Sherman was capable of performing other work that exists in significant numbers in the national economy, namely hand packager, cleaner, and landscaper. (AR 25).

Accordingly, the ALJ concluded Mr. Sherman was not disabled as defined by the Social Security Act from his alleged onset date through the date of the ALJ's decision. (AR 25).

## IV. Analysis

Mr. Sherman argues the ALJ committed reversible error by failing to: (1) give specifically legitimate reasons for rejecting Dr. Rexroad's opinions; (2) give proper reasons for rejecting Dr. Hughson's opinion; (3) incorporate portions of the state agency consultants' opinions; and (4) properly consider Mr. Chambreau's opinion. (Doc. 17 at 1-2). Defendant responds the ALJ reasonably considered the various opinions in formulating Mr. Sherman's RFC. (Doc. 8-19). For the following reasons, the Court finds the ALJ failed to apply the correct legal standards in evaluating Dr. Rexroad's and Dr. Hughson's opinions. The Court therefore does not reach either of Mr. Sherman's other arguments.

### A. <u>The Treating Source Rule and Dr. Rexroad's Opinion</u>

"Treating sources" are generally entitled to more weight than any other sources. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A treating source's opinion is entitled to "controlling weight" if it is both "supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence" in the record." *Id.* §§ 404.1527(c)(2), 416.907(c)(2). If the treating source's opinion is not entitled to controlling weight, the ALJ must apply several factors in determining how much weight to assign the opinion. *Id.* §§ 404.1527(c)(2), 416.907(c)(2). Those factors are: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and any examination or testing performed; (3) the

degree to which the treating source's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the treating source is a specialist in the area in which an opinion is rendered; and (6) any other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation omitted).

Tenth Circuit Court of Appeals precedent, federal regulations, and Social Security Rulings ("SSR") "all make clear" that "the ALJ must complete [the] sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see Watkins*, 350 F.3d at 1300. Even if it is not entitled to controlling weight, a treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§] 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188 *4 (July 2, 1996). The ALJ must "make clear how much weight the [treating source's] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified . . . for the weight assigned." *Krauser*, 638 F.3d at 1324 (citing *Watkins*, 350 F.3d at 1330); *but see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.").

Finally, in rejecting a treating source's opinion, the ALJ "'may not make speculative inferences from medical reports'" and may not reject the opinion based on her own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.

2000)). Rather, an ALJ may only reject a treating source's opinion based on contradictory medical evidence. *Id.*

In this case, Dr. Rexroad treated Mr. Sherman nine times in hour-long appointments from August 15, 2012, through May 12, 2014. (AR 489-98). Dr. Rexroad's notes reflect that Mr. Sherman regularly presented with a depressed and anxious mood, anxious or monotone tone, constricted affect, and either "fair" or "fair-poor" insight and judgment. (AR 489-98). At different times, Mr. Sherman reported feeling both "hope" and "despair" about finding employment. (AR 489, 495). Ultimately, Dr. Rexroad indicated Mr. Sherman has moderate to marked limitations in several areas. (AR 468-69; 477-78).

As discussed, the ALJ gave only "limited weight" to Dr. Rexroad's opinions. (AR 23). The ALJ assigned this weight because she considered Dr. Rexroad's assessments "incompatible with his treatment records, with each other, or with the medical evidence of record as a whole." (AR 23). The ALJ did not discuss whether Dr. Rexroad's opinions were entitled to controlling weight.

First, the ALJ failed to follow the treating physician rule by failing to discuss whether Dr. Rexroad's opinions were entitled to controlling weight. Instead, the ALJ "collapsed the two-step inquiry into a single point, stating only" the weight she gave the opinion and the reasons why. *Chrismon v. Colvin*, No. 12-5184, 531 Fed. Appx. 893, 901 (10th Cir. Aug. 21, 2013) (unpublished). However, the Tenth Circuit has declined to reverse on this ground where "the ALJ implicitly declined to give controlling weight" to a treating source's opinion. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

Accordingly, the Court will evaluate the reasons the ALJ gave Dr. Rexroad's opinions little weight. *See Langley*, 373 F.3d at 1120-23; *Chrismon*, 531 Fed. Appx. at 901.

Regarding incompatibility with his treatment records, the ALJ interpreted Dr. Rexroad's records to "routinely document good overall mental functioning." (AR 23). This appears to be the ALJ's own lay interpretation of Dr. Rexroad's notes, as Dr. Rexroad does not opine that Mr. Sherman showed "good overall mental functioning." (AR 489-98). As discussed, the ALJ may not substitute her lay opinion for the treating source's based on her own opinion of the source's notes. *See Winfrey*, 92 F.3d at 1021-23) (ALJ substituted its medical judgments for medical professionals', including severity of claimant's alcohol abuse). Thus, the ALJ impermissibly rejected Dr. Rexroad's opinion, in part, based on her own lay opinion.

Second, regarding inconsistencies between Dr. Rexroad's assessments, the ALJ did not elaborate or cite any inconsistencies in her opinion. The Court is therefore unable to meaningfully review this finding and may reverse on these grounds. *See Watkins*, 350 F.3d at 1300. Defendant cites one discrepancy between the two assessments. (Doc. 19 at 10). This is unavailing, however, as the Court may not consider *post hoc* rationalizations; the ALJ's decision must stand on its own. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004).

Finally, although the ALJ discussed the supportability and consistency of Dr. Rexroad's opinion with other evidence, the ALJ failed to discuss several relevant factors regarding Dr. Rexroad's opinions. Dr. Rexroad saw Mr. Sherman nearly ten times in a span of two years and spent an hour with Mr. Sherman each time. (AR 489-98). Yet the

ALJ did not discuss the length of the treatment relationship, the nature and extent of the treatment relationship, or whether or not Dr. Rexroad's treatment was within his specialty. *See* 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii).

To be sure, the ALJ supported her determination with some discussion of the medical evidence. (AR 23). However, the ALJ committed significant errors in assigning Dr. Rexroad's opinion limited weight. This is not a situation in which the Court can say "based on material the ALJ did at least consider (just not properly)," no reasonable factfinder could decide differently. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). On the contrary, the ALJ improperly rejected Dr. Rexroad's opinion based on her lay opinion, failed to support one of her reasons, and failed to demonstrate she considered relevant evidence. Consequently, the Court finds that the ALJ failed to apply the correct legal standards in rejecting Dr. Rexroad's opinion.

### B. The ALJ erred in evaluating Dr. Hughson's Opinion

Mr. Sherman also argues the ALJ erred by assigning limited weight to Dr. Hughson's opinion for illegitimate reasons. (Doc. 17 at 18-20). Defendant responds that the ALJ discounted Dr. Hughson's opinion for appropriate, valid reasons supported by substantial evidence. (Doc. 19 at 14-16).

Dr. Hughson performed a consultative exam on October 19, 2012. (AR 427). Dr. Hughson's report indicates she considered Mr. Sherman's psychiatric problems, work history, psychiatric history, past and family history, and notes from Mr. Sherman's prior treatment at the Southwest Counseling Center. (AR 427-30). While Dr. Hughson found Mr. Sherman to be "a pleasure to engage with during the one to one interview," she found Mr. Sherman was "gravely affected by his chronic mental illness" and "could not

be considered capable of fully supporting himself." (AR 431). Significantly, Dr. Hughson assigned Mr. Sherman a global assessment of functioning ("GAF") score of 45-48, indicating major impairment.[2] (AR 430). Dr. Hughson indicated Mr. Sherman suffers a number of moderate to marked limitations. (AR 432).

The ALJ gave three reasons for assigning Dr. Hughson's opinion limited weight: (1) Dr. Hughson's conclusions seemed "disproportionate to her findings, to an extent that suggests she relied too heavily on the claimant's subjective statements;" (2) Dr. Hughson is not a treating source; and (3) "the broad GAF score (45-58) [Dr. Hughson] assigned . . . raises some suspicion that her assessment may not provide much useful insight into the claimant's ability to perform work-related activities." (AR 22-23).

The first problem with the ALJ's reasoning is that she may not reject an opinion on the presumption that it is based solely on the claimant's subjective complaints. *Langley*, 373 F.3d at 1121. An ALJ may reject an opinion as based on incredible subjective complaints if the evidence supports that determination. *See Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (affirming ALJ's assignment of no weight where source "based his opinion on a single, subjective report" provided by claimant). For instance, in *Lindley v. Colvin*, the ALJ considered a doctor's opinion about a claimant's condition before December 31, 2000. No. 14-1426, 2016 WL 3227405 *6 (D. Kan. June 13, 2016) (unpublished). The ALJ rejected the doctor's opinion as "highly speculative" because the doctor treated the claimant beginning in November 2010, there was no record of the claimant's condition prior to February 2004, and the doctor

---

[2] GAF is a 0-100 score assessment of a person's psychological, social, and occupational function; 41-50 means "serious symptoms . . . or serious impairment in social, occupational, or school functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th Ed. 2000); *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012).

had no personal knowledge of the claimant's condition prior to December 31, 2000. *Id.* Thus, the doctor's opinion must have been based on speculation, the claimant's subjective statements, or both. The district court affirmed the ALJ's rejection, as it had an evidentiary basis. *Id.*

Here, by contrast, the ALJ's determination is based on her "speculative, unsupported assumption" that Dr. Hughson "relied too heavily" on Mr. Sherman's statements. *Victory v. Barnhart*, No. 03-7129, 121 Fed. Appx. 819, 823 (10th Cir. Feb. 4, 2005) (unpublished). Dr. Hughson's reviewed Mr. Sherman's medical and personal history in addition to interviewing him. (AR 427). The ALJ appears to have ignored Dr. Hughson's review and the possibility that her conclusion "might well have been based on [her] recent first-hand examination and observation" of Mr. Sherman, rather than his subjective complaints. *Victory*, 121 Fed. Appx. at 823. Thus, the ALJ's first reason for rejecting Dr. Hughson's opinion was invalid.

Second, the ALJ may not assign Dr. Hughson's opinion little weight merely because she is not a treating source. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) ("The Commissioner has not cited a single authority for the facially dubious proposition that the opinion of an examining medical source is, *as such*, dismissible."); *Doyal v. Barnhart*, 331 F.3d at 764 (holding an ALJ is required to consider non-treating source and provide "specific, legitimate reasons for rejecting it"). Sections 404.1527(c) and 416.927(c) state ALJs must "evaluate every medical opinion" and consider the six factors in deciding what weight to give the medical opinion. The ALJ plainly failed to do so. The ALJ's second reason for discounting Dr. Hughson's opinion was therefore also invalid.

13

The ALJ's final reason for rejecting Dr. Hughson's opinion is invalid as well, as it is based on a plain misreading of the record. The ALJ found Dr. Hughson's assigned GAF score of 45-58 too broad to be useful. (AR 22). But Dr. Hughson assigned a GAF score of 45-48, not 45-58. (AR 430). Defendant concedes the ALJ's error and does not defend it, arguing instead that the ALJ's other reasons were sufficient. (Doc. 19 at 14). As discussed, the Court finds they were not.

## V.     Recommendation

For the foregoing reasons, the Court finds that the ALJ failed to apply the correct legal standards. **IT IS THEREFORE ORDERED** that the Mr. Sherman's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (Doc. 17), is **GRANTED** and this matter is hereby **REMANDED** for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE